# Commonwealth ex rel. *v.* City Trust Safe Deposit and Surety Company.

*Principal and surety—Bond—Federal building contract—Voluntary payments.*

Where a surety on a bond given in pursuance of the act of congress to secure "payment to all persons supplying labor and materials" to a contractor in the erection of a public building, voluntarily pays a judgment obtained against it by a material man, and also an uncontested account, and subsequently another subcontractor establishes a claim which together with the amounts paid exceeds the penal sum of the bond, the surety will not be liable to such subcontractor merely for the difference between the amounts previously paid to other creditors and the penal sum, but its liability will be determined by ascertaining the per centum the creditors would be entitled to on an equal distribution among all, even if the result is a payment by the surety of an aggregate in excess of the penal sum of the bond. In such a case the surety company could have protected itself by restraining execution on the judgment, and by refusing to pay the uncontested claims, until the claim of the subcontractor of which the surety had knowledge, was adjusted.

Argued Jan. 20, 1909. Appeal, No. 138, Jan. T., 1908, by J. Hampton Moore, receiver of City Trust Safe Deposit and

Surety Company, from order of C. P. No. 5, Phila. Co., June Term, 1905, No. 2,040, dismissing exceptions to auditor's report in The Matter of the Claim of the United States of America to use of Harrisburg Trust Company, Receiver of Dauphin Bridge Company, in suit of Commonwealth of Pennsylvania ex rel. Hampton L. Carson, Attorney General, v. City Trust Safe Deposit and Surety Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of John M. Scott, Esq., and Ziba T. Moore, Esq., auditors.

The exceptions were as follows:

First, the learned auditors erred in finding the amount due to said claimant in the sum of $4,536.59; second, in not finding the amount due said claimant as the sum of $2,849.47; third, in making award to said claimant on the basis of a claim of $4,536.58; fourth, in not making award to said claimant on the basis of a claim of $2,849.47; fifth, in not allowing against said claim full credits for judgments heretofore recovered on the bond by creditors, at the suits of the United States of America to their use, and paid by the City Trust Safe Deposit and Surety Company.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing the exceptions.

*Joseph H. Slattery,* with him *John Kent Kane, Staake & Patton* and *Murdock Kendrick,* for appellant, cited: United States v. Shipbuilding, etc., Co., 137 Fed. Repr. 689.

*John Douglass Brown,* with him *Henry Wolf Bikle* and *Wolfe & Bailey,* for appellee, cited: United States v. Rundle, 100 Fed. Repr. 400; Com. v. Kean, 13 Pa. Superior Ct. 167; Com. v. Kean, 19 Pa. Superior Ct. 576; American Surety Co. v. Cement Co., 96 Fed. Repr. 25; United States v. Heaton, 128 Fed. Repr. 414; United States v. Shipbuilding, etc., Co., 137 Fed. Repr. 689; U. S. F. & G. Co. v. Struthers Wells Co., 209 U. S. 306.

OPINION BY MR. JUSTICE STEWART, March 29, 1909:

This is an appeal from a decree of distribution of the assets in the hands of the receiver of the City Trust Safe Deposit and Surety Company of Philadelphia. The Penn Erecting Company having been awarded by the United States a contract for the erection of a public building, gave bond, as required by the act of congress, in a penal sum conditioned that it would "promptly make payment to all persons supplying labor and materials in the prosecution of the work provided for in the aforesaid contract." The obligee named in the bond is the United States; the penal sum is $6,695, and the surety the City Trust Safe Deposit and Surety Company. The Penn Erecting Company completed the building it had contracted to erect, but in the end was largely indebted to various parties who had supplied it with the required materials. Default having been made in the payment of this indebtedness, separate suits were brought on the bond by the individual claimants, and judgment against principal and surety followed in each case, except in the suit of the Dauphin Bridge Company. While the suit of the bridge company was brought quite as promptly as the others, though in a different court, it alone was halted by a defense set up, and its suit was undetermined when the distribution, which is here appealed from, was made. The surety company without delay paid in full the judgment obtained against it, amounting to $3,625.70, and in addition paid an uncontested account of $219.83 in full, thus making its entire payment on account of its liability $3,845.53. Some time thereafter the surety company passed into the hands of a receiver, as did also the bridge company. At the audit of the account of the receiver of the surety company, the claim of the bridge company was submitted, and proved to the amount of $8,082.27, by the Harrisburg Trust Company, its receiver. Its right to participate in the distribution was not denied. Not only was there no attempt to dispute the honesty and accuracy of this claim, but it was distinctly admitted that the defense set up to the action brought by the bridge company by way of set-off, could not be sustained. The other defense to the action was that the surety

company, having paid on account of its liability on the bond the sum of $3,845.53, was entitled to a credit for this sum, and in no event could be required to pay to the plaintiff anything in excess of the difference between its credits and the penal sum in the bond. And this states the whole controversy which was before the auditor, and which is renewed here by this appeal. The auditor instead of limiting the recovery to the difference between the amount previously paid by the surety company and the penal sum, ascertained the per centum the creditors would be entitled to on an equal distribution between all, and as a result awarded to the bridge company the sum of $4,536.58. The report of the auditor was approved by the court below, and it meets with our approval as well. Whatever the surety company will have paid on this contract of suretyship in excess of its legal liability therein, must be regarded as a voluntary payment by it. Its covenant while with the government was exclusively for the protection of the contractors under the Penn Erecting Company. When the surety company entered into the covenant it did not know, and could not have known, the parties with whom the erecting company would contract, the amounts that would be due each, or the times of payment; but it must have understood its covenant to be for the protection of all alike, that is to say, that each was to share in the protection of the covenant on an equitable basis. Whether it did so or not, it is the plain and manifest meaning of the bond; the subcontractors, not a selected few, but all embraced in the class, are the real use parties. It matters not that their names are not written in the bond. They could not have been because the bond was a condition precedent to the awarding the contract; but the use is as clearly defined as though their names appeared. Besides, to allow the surety, either through favoritism or neglect, to work out a result which would give priority to some creditor or creditors over others, would be to defeat the very purpose the government has in view in requiring bonds for the protection of subcontractors. The surety company is without the slightest equity. It paid the judgments obtained against it with full knowledge of the fact that there was then

an outstanding and unsatisfied claim of the bridge company; then in suit, for an amount which, together with the claims already liquidated, much exceeded the limit of its own liability. Yet with knowledge of this fact, it proceeded to pay some of the creditors in full. It is no excuse to say that these payments were made to avoid execution. Threatened execution could and should have been met by appeal to the court to put its restraining hand upon the creditor who would attempt to use its process, not for the collection of his own debt solely, but in part to defeat someone else in equal right with himself, in the fund to be subjected, and that too at the cost of the surety. We see no merit in the appeal, and it is accordingly dismissed at the costs of the appellants.